# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| RUSSELL BRYANT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:13-CV-1931-NAB |
| | ) | |
| MICHAEL S. BOWERSOX, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This action is before the Court on Petitioner Russell Bryant's Amended Petition for Writ of Habeas Corpus[1] pursuant to 28 U.S.C. § 2254, Petitioner's Motion for Expansion of the Record, and Petitioner's Request for an Evidentiary Hearing. [Docs. 12, 15, 17.] Respondent Michael Bowersox filed a response to the original Petition for Writ of Habeas Corpus. [Doc. 8.] Bryant filed a Reply Brief. [Doc. 16.] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). [Doc. 9.] For the reasons set forth below, Bryant's petition for writ of habeas corpus and the other pending motions will be denied.

## I. Background

After a jury trial, Bryant was convicted of second degree murder, armed criminal action, and attempted stealing. (Resp't Ex. B at 50-53.) Bryant received a life sentence for the second

---

[1] Bryant's original petition was filed on September 27, 2013. Petitioner then filed an Amended Petition on December 30, 2013, after Respondent had filed his response and without leave of court. The Court has carefully reviewed both petitions and has not found any substantive differences between the two petitions. The first petition contains two additional paragraphs generally listing Bryant's claims before this court and the state court. The Court will grant Bryant leave to file the Amended Complaint. "It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect. *In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396 F.3d 922, 928 (8th Cir. 2005).

degree murder conviction, one hundred years for the armed criminal action conviction, and four years for the attempted stealing conviction. (Resp't Ex. B at 51-52.) The one hundred year sentence is consecutive to the life sentence. (Resp't Ex. B at 51.) The attempting stealing sentence is concurrent to the other sentences and has already been served. (Resp't Ex. B at 52.)

The following evidence, in the light most favorable to the verdict was presented at trial.[2] On October 14, 2006, shortly after noon, James Feser parked his car on the street near his house. When Feser came out after 4:00 p.m. to leave, his car was missing. Feser called the police about his missing car. On October 15, 2006, at around 6:00 a.m., Andre Cole was driving when another car cut him off. That car then pulled over and stopped at a nearby intersection. Cole observed a little young guy standing at that corner as if he was waiting on a bus.

Two individuals got out of the car- one from the back seat and one from the front seat passenger's side. The front seat passenger approached the young man standing on the corner, and then put his arm around the man standing on the corner. The back seat passenger then started patting down the man standing on the corner, and grabbing at his pockets. At that point, from what Cole observed, it looked like the front seat passenger was choking the man standing on the corner. The man then pushed away and began to run in the direction of Cole's car. The front seat passenger managed to get ahead of the man.

The front seat passenger then pushed the man down and shot him. The front seat passenger then noticed that Cole was present and pointed the gun at Cole. Then, Cole drove off to avoid the chance of being shot. After driving off, Cole looked in his rearview mirror and observed the two individuals getting back into the car and driving off. The police were called to the location of the shooting. The victim died at the scene. Officer Jennifer Dudley went to the

---

[2] These facts are taken directly from the Supplemental Memorandum accompanying the Missouri Court of Appeals decision in Bryant's direct appeal. *See* Resp't Ex. F. A state court's determination of a factual issue made by a State court shall be presumed to be correct. 28 U.S.C. § 2254.

crime scene as an evidence technician. While at the crime scene, Officer Dudley located and recovered a shell casing.

Cole described the front seat passenger as tall with popcorn or beady hair. The individual was wearing a red hood and red and gray coat. Cole described the backseat passenger as shorter and having long dreadlocks in his hair. Cole further described the gun as being silver.

The following day, on October 16, 2006, Dr. Kamal Sabharwal performed an autopsy of the victim Ron Thomas. In the exam, Dr. Sabharwal observed a gunshot wound to the abdomen and concluded the gunshot was the cause of death. Dr. Sabharwal also recovered the bullet from the body of the victim.

On October 16, 2006, Officer Richard Long was on patrol and observed a car that matched the description of Feser's car. At some point, the driver of the car got out to assist another individual who appeared to need a jump start. Officer Long and other officers moved in to apprehend the driver of the car. When the officers identified themselves, the driver of the vehicle and the person he was standing with, began to flee. Officer Long went to secure the vehicle and observed a nickel plated semiautomatic handgun on the passenger side of the car. Officer Long took possession of the handgun. As Officer Long was preparing to leave the vehicle, another officer returned with the person who had been driving the vehicle. He was identified as Avrion Jones and was taken into custody.

On October 17, 2006, Detective Jeffrey Stone learned that Feser's car had been recovered the previous night, and that a handgun had been found in it. Because the caliber of the handgun matched the caliber of the bullet used to kill Ron Thomas, and the car was similar in color to the car described by Cole, Detective Stone requested that a comparison be made between the handgun and the bullet recovered from the victim's body.

Officer David Menendez conducted a firearm analysis. Officer Menendez determined that the handgun recovered from the vehicle was the gun used to kill Thomas because the bullet and the shell casing from the test firing matched the bullet recovered from the body of Thomas and the shell casing found at the scene.

On October 17, 2006, Cole was asked to view a physical line-up. Detective Thomas Carroll was in the room with Cole as he viewed the line-up. Cole then identified Avrion Jones as the back seat passenger. Cole later identified Feser's car as the car that had cut him off. On October 18, 2006, Detective Carroll went to the location where Feser's car had been towed. Detective Carroll looked through the car and recovered some items, including several CDs, an empty cigarette pack, and some cigarettes. The cigarette pack was recovered from the front passenger's seat. Detective Carroll contacted Feser about the items, and Feser told Detective Carroll that those items did not belong to him.

On October 23, 2006, Sandra Wood, a latent print examiner, processed some of the items seized from the car for fingerprints. Wood found and recovered a fingerprint from the cigarette pack. The fingerprint matched Bryant's fingerprint. After Bryant was identified as a potential suspect, Cole was asked by Detective Carroll to view a photographic line-up. Cole identified Bryant as the front seat passenger and Ron Thomas' shooter. After Bryant was arrested, Cole viewed a physical line-up and again picked Bryant as the shooter. Cole also identified Bryant as the shooter at the trial.

Before his trial began, Bryant filed a motion to suppress the identifications as unduly suggestive. His motion was denied. Bryant also filed motions for judgment of acquittal at the close of the State's evidence and again at the close of all the evidence, which were also denied by the trial court. After judgment and sentence were entered, Bryant filed a direct appeal, which

was denied by the Missouri Court of Appeals. Bryant later filed a post-conviction motion with the trial court and an evidentiary hearing was held. The trial court denied Bryant's post-conviction motion and his appeal of that denial was affirmed by the Missouri Court of Appeals. Bryant then filed the instant petition for writ of habeas corpus.

## II.     Legal Standard

The Anti-Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to § 2254, a federal court is limited to deciding whether a claim that was adjudicated on the merits in state court proceedings (1) resulted in a decision that is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings." 28 U.S.C. § 2254(d). A determination of a factual issue made by a state court is presumed to be correct unless the petitioner successfully rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

For purposes of § 2254(d)(1), the phrase "clearly established federal law refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). "In other words, clearly established federal law under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id.* To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he

thinks the state courts acted contrary to or unreasonably applied. *Buchheit v. Norris*, 459 F.3d 849, 853 (8th Cir. 2006).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent.'" *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (citing *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000)). A state court decision is an 'unreasonable application of' clearly established Supreme Court precedent if it correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case. *Id.* (citing *Williams*, 529 U.S. at 407–408). "A federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable." *Penry*, 532 U.S. at 793. "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." Evanstad v. Carlson, 470 F.3d 777, 782 (8th Cir. 2006). A "readiness to attribute error is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). AEDPA's highly deferential standard demands that state court decisions be given the benefit of the doubt. *Id.*

## III.    Discussion

### A.    Requests for Evidentiary Hearing and to Expand the Record

First, Bryant requests an evidentiary hearing and leave to expand the record. [Docs. 15, 17.] The Respondent has not responded to these motions. Bryant states that he wishes to add

"recently obtained new evidence that was not in his possession when [his] claim was raised in the circuit court." Exhibits A, B, C, and D consist of psychological, legal treatise, and law review articles regarding eyewitness identification. [Doc. 15-2.] Exhibit E is a Google maps list of driving directions. [Doc. 15-2.] Exhibit G contains pictures that are unclear, but are identified by Bryant as crime scene photographs. [Doc. 15-2.] Exhibit H includes what appear to be pictures of a line-up. [Doc. 15-2.] Exhibits I and K are letters from Bryant's former attorney Andrew Zliet to Bryant and the Court. [Doc. 15-2.] Exhibit L is the circuit court's Order regarding post-conviction proceedings. [Doc. 15-2.] There do not appear to be any exhibits labeled Exhibits F, J, M, N, O, T, Q, R, or S as listed in Bryant's Reply Brief.

"If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition." Rule 7(a) of the Rules Governing Section 2254 Cases in the United States District Courts. The judge may require that the materials be authenticated. Rule 7(b) of the Rules Governing Section 2254 Cases in the United States District Courts. "When a petitioner seeks to introduce evidence pursuant to this rule, the conditions prescribed by § 2254(e)(2) must still be met." *Mark v. Ault*, 498 F.3d 775, 788 (8th Cir. 2007). Section 2254(e)(2) provides that

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or a factual predicate that could not have been previously discovered through the exercise of due diligence; and the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

As an initial matter, Bryant has provided no support or argument for why these exhibits should be included in the record. Further, the pictures of the crime scene and the physical line-up are not "new" evidence. The Court does not believe that further expansion of the record is necessary for resolution of this case. The Court concludes that no ground of the petition requires further evidentiary development for its resolution and Bryant fails to demonstrate that an evidentiary hearing is justified under the requirements of 28 U.S.C. § 2254(e)(2). The requests for an evidentiary hearing and to expand the record are therefore denied.

### B. Habeas Petition

#### 1. Ground 1- Identification of the Victim

First, Petitioner contends that the trial court erred in overruling his motions for judgment of acquittal at the close of the state's evidence and motion for judgment of acquittal notwithstanding the verdict, because the state failed to meet its burden of proving beyond a reasonable doubt that the person named in the substitute information, Ronald Thomas was the same person murdered.

The Due Process Clause of the Fifth Amendment provides that no one can be deprived of liberty without due process of law and the Sixth Amendment guarantees that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. Const. amend. V, VI. "[These] provisions require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *U.S. v. Gaudin*, 515 U.S. 506, 510 (1995). "In the interests of finality and federalism, federal habeas courts are constrained by [AEDPA] to exercise only a limited and deferential review of underlying state court decisions." *Sera v.*

*Norris*, 400 F.3d 538, 542 (8th Cir. 2005). State law defines the elements of state law crimes. *Fenske v. Thalacker*, 60 F.3d 478, 480 (8th Cir. 1995).

A state prisoner is entitled to habeas corpus relief if the court finds that "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The court must presume that the trier of fact resolved all conflicting inferences in favor of the state and the court must defer to that resolution. *Whitehead v. Dormire*, 340 F.3d 532, 536 (8th Cir. 2003). "A judgment by a state appellate court rejecting a challenge to evidentiary sufficiency is of course entitled to deference by federal courts, as is any judgment affirming a criminal conviction." *Jackson*, 443 U.S. at 323.

In Missouri state court, "[a]lthough proof of the identity of the victim is not a material element in the crime of second degree murder, the state has the burden of proving beyond a reasonable doubt that the person named in the indictment as being murdered is the same person proved murdered at trial." *State v. West*, 939 S.W.2d 399, 402 (Mo. Ct. App. 1996). The identity of the victim can be proven by circumstantial evidence. *State v. Lieberknecht*, 608 S.W.2d 93, 101 (Mo. Ct. App. 1980).

At trial, Bryant did not object that Ronald Thomas was not the person murdered. His motions for acquittal did not challenge the victim's identity. Resp't Ex. B at 32-35. During trial, the prosecutor and Bryant's defense counsel referred to the victim as Ronald Thomas. Several witnesses, including the police officers and the coroner, testified that the victim was Ronald Thomas. There was no evidence presented that would challenge the victim's identity. The Missouri Court of Appeals, in an unpublished memorandum, found that the state met its burden to prove that Ronald Thomas was the victim in the underlying case. Resp't Ex. F. at 6-8. The

Court of Appeals cited to all of the circumstantial evidence supporting the proposition that Ronald Thomas was the victim. The state appellate court's findings and conclusions were not contrary to, nor do they involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. The state court's findings are consistent with federal constitutional standards and Bryant's first ground for relief will be denied.

### 2.    Ground 2- Failure to Suppress Out of Court Identifications

Petitioner's second ground for relief states that the trial court erred in overruling his motion to suppress out-of-court identifications, because the identifications were suggestive, created a substantial likelihood of misidentification, were inherently unreliable, and violated his rights under the Due Process Clause under the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution.

### a.    Photographic Lineup

The Supreme Court has recognized, "state and federal statutes and rules ordinarily govern the admissibility of evidence, and juries are assigned the task of determining the reliability of the evidence presented at trial." *Perry v. New Hampshire*, 132 S.Ct. 716, 723 (2012). "It must be recognized that improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals. A witness may have obtained only a brief glimpse of a criminal, or may have seen him under poor conditions." *Simmons v. U.S.*, 390 U.S. 377, 383 (1968). "Even if the police subsequently follow the most correct photographic identification procedures and show him the pictures of a number of individuals without indicating whom they suspect, there is some danger that the witness may make an incorrect identification." *Id.* The chances of

misidentification are increased "if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime. Regardless of how the initial misidentification comes about, the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification." *Id.* at 383-84.

Each case is considered on its own facts. *Simmons*, 390 U.S. at 384. Convictions based on eyewitness identification at trial following a pre-trial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons*, 390 U.S. at 384. "Even if a photographic identification is impermissibly suggestive, however, the 'central question' regarding eyewitness identification at trial is whether under the totality of circumstances, the identification was reliable despite any suggestive or inappropriate pretrial identification techniques." *Palmer v. Clarke*, 408 F.3d 423, 435 (8th Cir. 2005). Reliability is the "linchpin" in determining the admissibility of identification testimony. *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). The factors to be considered in determining admissibility are the following: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of his prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation. *Id.* "Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Id.* "The existence of each factor is a factual determination to be made by the state court … and is entitled to the requisite presumption of correctness." *Palmer*, 408 F.3d at 435-436. "The admissibility of evidence in a state trial is a matter of state law," and habeas relief will be granted only if the "state court's evidentiary ruling

infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process." *Palmer*, 408 F.3d at 436.

In this case, Bryant has not identified, in either his petition or reply brief, what made the photographic array so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. At trial, Detective Carroll testified that he created a photo spread of six pictures from a computer program. Detective Carroll tried to select people with a similar hair style, race, same sex, facial hair, complexion, and facial features. Detective Carroll testified that Cole selected Bryant from the photographic line-up.

In his state court pleadings, Bryant stated that he was the only person in the photographic lineup who had a similar hairstyle and clothing to the description of the suspects. The Missouri Court of Appeals found that Bryant failed to meet his burden to show that the photographic lineup was unduly suggestive. In a supplemental memorandum to its opinion, the Court of Appeals noted that Detective Carroll used a computer program to find individuals who looked roughly similar to the description given by Cole for the photographic lineup. "Where there are no differences in appearance tending to isolate the accused's photograph, the identification process is not unnecessarily suggestive." *Schawitsch v. Burt*, 491 F.3d 798, 802 (8th Cir. 2007). "Reasonable variations in hair length and facial hair are not impermissibly suggestive, especially as they can vary on any given person at different times." *Id.* at 803.

After careful review of the record, the Court finds that the state appellate court's findings and conclusions were not contrary to, nor do they involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. The state court's findings are consistent with

federal constitutional standards and Bryant's second ground for relief regarding the photographic lineup and subsequent identification at trial will be denied.

### b.      Physical Lineup Identification

Next, the Court will address Bryant's claim that the physical line-up was unduly suggestive.  Bryant asserts that the physical line-up was suggestive, because the officer put the participants in the line-up in yellow shirts, while he was in the complete yellow jail jump suit with the top and bottom.  Bryant contends that it was clear that the other participants in the line-up were trying to look like him.  Bryan states that the officers could have put everyone in the full yellow prisoner jumpsuit, instead he stuck out like a sore thumb.  The Court of Appeals found that Bryant failed to demonstrate that physical lineup was unduly suggestive.

"A lineup is not made unnecessarily suggestive due to the number of non-suspects in a lineup or because the non-suspects are different from a suspect in physical appearance or attire." *Collins v. Bowersox*, No. 4:04-CV-1194 RWS, 2007 WL 2231040 at *10 (E.D. Mo. Jul. 31, 2007).  "A police station is not a theatrical casting office, and all that is required is that a reasonable effort is made to find physically similar participants." *Id.*  Assuming arguendo, that the procedure was impermissibly suggestive because Bryant was the only person in a jail uniform, considering the totality of the circumstances, the physical lineup identification did not result in a substantial likelihood of misidentification.  *U.S. v. Johnson*, 56 F.3d 947, 954 (8th Cir. 1995) (even assuming procedure was impermissibly suggestive because petitioner was the only person in lineup in jail uniform; based on totality of circumstances, lineup procedures did not result in substantial likelihood of misrepresentation).  In this case, several factors lend to the reliability of the lineup identification.  Cole viewed the crime and the assailants closely for a short period of time.  *Johnson*, 56 F.3d at 954.  Cole gave a description of the shooter to the

police shortly after the crime and previously identified Bryant in a photo spread.  *Id.*  Cole also testified that the officers did not tell him anything about who he would see during the line-up.

Based on the foregoing, the Court finds that the state appellate court's findings and conclusions were not contrary to, nor do they involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings regarding the physical line-up and subsequent identification of Bryant at trial.

### 3.      Ground 3- Ineffective Assistance of Counsel

Third, Bryant asserts that he received ineffective assistance of counsel and violation of due process of law, because trial counsel failed to reasonably inform him of the maximum sentence he faced in connection with his rejection of a 30 year plea offer.  Petitioner claims he was prejudiced, because he was unaware of the meaning of concurrent and consecutive sentences and would have accepted the state's offer of 30 years if he had known the sentencing range.

To succeed in a claim "that counsel's assistance was so defective as to require reversal of a conviction," a petitioner must establish (1) that the trial counsel's performance fell below an objective standard of reasonableness and (2) that this deficient performance prejudiced the Petitioner's defense.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

The "performance" component of *Strickland* requires a showing that "counsel's representation fell below an objective standard of reasonableness."  *See Strickland*, 466 U.S. at 688.  To satisfy this prong, a petitioner must first identify the specific acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  *Id.* at 690.  The court must then examine the totality of the circumstances in order to determine

whether "the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* In making this determination, the court should recognize that trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

To satisfy the "prejudice" component of *Strickland*, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Such "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In determining whether prejudice exists, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695. Further, the court "should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge and jury acted according to the law." *Id.* at 694. It is important to note that "there is no reason for a court deciding an ineffective assistance claim to approach the [two-pronged] inquiry in [a predetermined] order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

Bryant contends that he received ineffective assistance of trial counsel in three specific instances: (1) counsel was aware of the maximum punishment and failed to explain the maximum sentence he could receive if he rejected the state's 30 year plea offer and was convicted; (2) counsel never explained the meaning of the words consecutive or concurrent, nor the effect it would have on his sentence; and (3) counsel never explained that armed criminal action charge was an unclassified felony and there was a possibility that he could receive a 100 year sentence.

On July 6, 2011, the sentencing court held an evidentiary hearing on Bryant's amended post-conviction motion to vacate, set aside, or correct sentence. The amended motion included his claim of ineffective assistance of counsel. (Resp't Ex. G.) Bryant and his trial counsel Jolene Taaffe testified at the evidentiary hearing. Taaffe testified as follows: She met with Bryant at least 15 times before trial. (Resp't Ex. G at 10.) The state first offered a plea agreement that entailed Bryant pleading guilty to second degree murder in exchange for a "soft" life sentence (30 years). (Resp't Ex. G at 10.) Bryant authorized her to seek a plea agreement where he would plead guilty to murder second and receive between 10 and 14 years. (Resp't Ex. G at 10-11.) He authorized her to make multiple counter offers between that range. (Resp't Ex. G at 11.) Taaffe questioned Bryant's alibi witness-his grandmother, but Taaffe did not believe that she was a good witness, because she could not remember if Bryant was at her home or not during the time of the shooting. (Resp't Ex. G at 12.) Taaffe testified that they were trying to get the case pled. (Resp't Ex. G at 13.) Bryant made multiple counter offers, but the state's offer remained 30 years. (Resp't Ex. G at 14.) Taaffe did not have an independent recollection that she informed Bryant that he could be sentenced in excess of 30 years. (Resp't Ex. G at 14.) She did not recall anything about the sentencing, other than she was shocked at the sentence. (Resp't Ex. G at 14.) Given Bryant's prior history, they thought he would receive somewhere between 20 and 25 years if convicted of second degree murder. (Resp't Ex. G at 15.) Taaffe spoke with Bryant multiple times regarding an alibi defense, filed a notice of alibi, and presented the alibi defense at trial. (Resp't Ex. G at 17-25.) Bryant expressed that he did not commit the crime, but he was looking for some type of negotiations. (Resp't Ex. G at 27.) Bryant did not want to risk getting life without parole for murder in the first degree and that is why they were trying to negotiate a deal. (Resp't Ex. G at 27.) Taaffe does not have an independent collection

of explaining to him the difference between consecutive and concurrent sentences, but it is her general practice to do so. (Resp't Ex. G at 29-30.) Taaffe's assessment of the case was that it was not a murder in the first degree case. (Resp't Ex. G at 32.) She gave him the recommendation from the state and discussed with him the pros and cons of taking the recommendation versus going to trial. (Resp't Ex. G at 32-33.) Taaffe told him that he could get life without [parole] on murder one, he could get a lesser sentence if convicted of murder two, or he could walk free. (Resp't Ex. G at 33.) They had an alibi defense and a "mis-ID" defense. (Resp't Ex. G at 33.) Taaffe's notes do not indicate that she informed Bryan that the possible sentence on an armed criminal action is unlimited. (Resp't Ex. G at 34.)

Bryant testified as follows: He spoke to Taaffe about 15 times during her representation of him. (Resp't Ex. G at 36.) He spoke to her about his alibi of being at his grandmother's house. (Resp't Ex. G at 36.) Taaffe told him that if he lost at trial, he wouldn't lose on first degree murder, it would be second degree murder, because there were only second degree elements and no deliberation. (Resp't Ex. G at 36.) She told him if he went to trial, he would get thirty years and if he pled guilty, he would get thirty years. (Resp't Ex. G at 36.) He understood the state's recommendation to be thirty years. (Resp't Ex. G at 36-37.) Taaffe did not believe him, because she said if she were on the jury she would find him guilty of second degree murder. (Resp't Ex. G at 37.) Bryant did not know that he could be sentenced to more than 30 years or that he could be sentenced to 130 years. (Resp't Ex. G at 37.) If he had known that he could receive more than thirty years before trial, he would have accepted the plea offer of thirty years. (Resp't Ex. G at 37.) Bryant stated he was under the impression that he had nothing to lose so he might as well go to trial. (Resp't Ex. G at 37, 46.) In addition to the three charges in the underlying case, he had additional charges of assault on a law enforcement officer, home

invasion, armed criminal action, and unlawful use of a weapon.  (Resp't Ex. G at 38.)  His understanding of the plea agreement was that all seven charges would be included in the plea agreement for thirty years.  (Resp't Ex. G at 38.)  Bryant thought after he lost the trial, Taaffe had told him that he would get less than thirty years, because the judge was a fair judge and would take Bryant's age into consideration.  (Resp't Ex. G at 38.)  Taaffe basically forced him to go to trial.  (Resp't Ex. G at 41.)  Bryant stated that he was innocent of the crime, but would have pled guilty if he had known he was going to get the time he received.  (Resp't Ex. G at 43-44.)  Taaffe did not inform him about the range of punishment for armed criminal action.  (Resp't Ex. G at 45.)  Taaffe told him that he could be sentenced anywhere from 10 to 30 years.  (Resp't Ex. G at 46.)

The Court will assume, without deciding, that trial counsel failed to tell Bryant that he could receive an unlimited sentence for armed criminal action.  Therefore, the Court will turn to the prejudice prong of the *Strickland* analysis.  A defendant, after rejecting the proposed plea bargain and receiving a fair trial, may show prejudice if the plea bargain agreement would have resulted in a lesser sentence.  *Engelen v. U.S.*, 68 F.3d 238, 241 (8th Cir. 1995).  "To establish prejudice, however, the movant must show that, but for his counsel's advice, he would have accepted the plea.  To command an evidentiary hearing, the movant must present some credible, non-conclusory evidence that he would have pled guilty had he been properly advised."  *Id.*

As an initial matter, Bryant cannot show prejudice, because Bryant knew that he was charged with first degree murder, which he knew carried the possibility of a life sentence without the possibility of parole.[3]  When discussing the benefits and drawbacks of pleading guilty, Taaffe testified that she told Bryant that he could receive a possible life sentence without the possibility

---

[3] Although Petitioner claimed at the evidentiary hearing he did not know he could receive life without parole for conviction of murder in the first degree (Resp't Ex. G at 42.), he acknowledged he knew of this possibility in a letter to his counsel, which he submitted to the court in January 2011.  (Resp't Ex. H at 31-33.)

of parole if convicted of first degree murder. The state motion court found Taaffe's testimony credible and the Court defers to that finding. Notwithstanding Bryant and Taaffe's confidence that the jury would not return a guilty verdict for first degree murder, there was no guarantee that he would be acquitted on that charge. Therefore, even if he did not know his sentence was unlimited under the armed criminal action count, if he went to trial and was convicted of first degree murder, he would still be facing a life sentence without the possibility of parole- substantially equivalent to an unlimited sentence.

Also, the record weighs against Bryant's assertion that he would have pled guilty. Although Bryant considered a plea deal with the state, he has vigorously maintained his innocence. Bryant testified at trial that he was at his grandmother's house at the time of the murder and he did not murder the victim. At his sentencing, Bryant again maintained his innocence. At the evidentiary hearing on his post-conviction motion, Bryant maintained his innocence. "A defendant who maintains his innocence at all stages of his criminal prosecution and shows no indication that he would be willing to admit his guilt undermines his later [habeas] claim that he would have pleaded guilty if only he had received better advice from his lawyer." *Sanders v. U.S.*, 341 F.3d 720, 723 (8th Cir. 2003). Bryant's conduct in the defense of his case undermines his current assertion that he would have accepted the proposed plea agreement; therefore, the Court finds that he is unable to satisfy the prejudice requirement of his ineffective assistance of counsel claim.

### 4.       Ground 4- Excessive Sentence

Bryant's final claim for review states that the trial court erred by sentencing him to 130 years in violation of his rights to trial by jury, a fair sentence, right against self-incrimination, equal protection, and cruel and unusual punishment. Bryant states that the judge sentenced him

to a sentence four times that of the state's pretrial offer, because he exercised his right to go to trial. Bryant's claim cannot be reviewed, because he has failed to exhaust his state law remedies regarding this claim.

A state prisoner's petition for federal habeas corpus review under 28 U.SC. § 2254 may only be granted if the prisoner has exhausted his state law remedies. 28 U.S.C. § 2254(b)(1)(A). "Ordinarily a federal court reviewing a state conviction in a [§ 2254] proceeding may consider only those claims which the petitioner has presented to the state court in accordance with state procedural rules." *Arnold v. Dormire*, 675 F.3d 1082, 1086 (8th Cir. 2012). "In Missouri, a claim must be presented at each step to avoid default." *Id.* at 1087 (citing *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994)). "Requiring the exhaustion of state remedies both allows the states to correct any possible constitutional violations without unnecessary intrusion by the federal courts and allows the state courts to create a factual record should the matter proceed to federal court." *Weeks v. Bowersox,* 119 F.3d 1342, 1349-50 (8th Cir. 1997).

The Court of Appeals declined to review Bryant's excessive sentence claim, because it should have been raised on direct appeal rather than in a post-conviction motion, pursuant to Rule 29.15. (Resp't Ex. K at 10.) Further, the Court of Appeals stated that its review of the record of the underlying case revealed no rare and exceptional circumstances requiring review of the claim. (Resp't Ex. K at 10.) Bryant contends that the appeal court's error was only reviewing this claim for plain error and not constitutional error.

Bryant defaulted his excessive sentence claim in state court. This court is barred from reviewing Bryant's claim if the state court finds that his claim is defaulted under state law, even if the state court reviewed his claim under plain error review. *Hayes v. Lockhart*, 766 F.3d 1247,

1252-53 (8th Cir. 1985). The burden of justifying federal habeas relief for state prisoners is greater than the plain error showing required on direct appeal. *Id.* at 1253.

To overcome the default, a defendant must demonstrate either cause and actual prejudice as a result of the alleged violation of federal law, or demonstrate that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To show cause for the default, defendant must demonstrate that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. *Murray v. Carrier,* 477 U.S. 478, 488 (1986). For example, a defendant could demonstrate that the factual or legal basis for a claim was not reasonably available to counsel or some interference by officials made compliance impracticable. *Id* at 488. While ineffective assistance of counsel constitutes cause for a procedural default, the exhaustion doctrine generally requires that an ineffective assistance claim be presented to the state courts as an independent claim before it may be used to establish cause of a procedural default in federal habeas proceedings. *Id*. at 489. An ineffective assistance of counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted. *Edwards v. Carpenter,* 529 U.S. 446, 453 (2000). This procedural default may be excused if the prisoner can then satisfy the cause-and-prejudice standard with respect to that claim. *Id.*

In this case, Bryant contends that the appeals court should have reviewed his claim for constitutional error not plain error. "A federal court may not re-examine a state court's interpretation and application of state law. Thus a state's misapplication of its own procedural rule is not cause for default." *Schleeper v. Groose*, 36 F.3d 735, 737 (8th Cir. 1994) (internal citations omitted). Because the state court's decision to decline to review Bryant's claim does not constitute cause for default, the Court will not consider the prejudice prong.

Second, Bryant contends that ineffective assistance of counsel caused his default, but he did not make an independent claim of ineffective assistance of counsel regarding his excessive sentence claim in state court. *See Murray*, 477 U.S. at 489. Bryant only raised an ineffective assistance of counsel claim regarding counsel's advice about his potential sentencing range. To save his claim from default, without any analysis, Bryant cites heavily from the Supreme Court decision in *Martinez v. Ryan*, 132 S.Ct. 1309, 1320 (2012). In *Martinez v. Ryan*, the Supreme Court held:

> Where under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial, if in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez*, 132 S.Ct. at 1320. The Eighth Circuit has held that *Martinez* does not stand for the proposition that the failure to preserve claims on appeal from a post-conviction proceeding can constitute cause. *Arnold*, 675 F.3d at 1087 (citing *Martinez*, 132 S.Ct. at 1320) (holding does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings).

Liberally construing Bryant's Petition, it appears that Bryant is stating that his initial post-conviction counsel was ineffective for failing to assert an ineffective assistance of counsel claim against his direct appeal counsel regarding his excessive sentence claim. Section 2254(i) provides that "the ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). Cause is not synonymous with a ground for relief. *Martinez*, 132 S.Ct. at 1320. "A finding of cause and prejudice does not entitle the [petitioner] to habeas relief.

It merely allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted." *Martinez*, 132 S.Ct. at 1320. If a petitioner's claim is against initial post-conviction counsel, to overcome the default, the petitioner must also demonstrate that the underlying ineffective assistance of counsel claim is a substantial one, which means the petitioner must demonstrate that the claim has some merit. *Martinez*, 132 S.Ct. at 1318-19.

Bryant is unable to satisfy the requirements of *Martinez*, because the underlying ineffective assistance of counsel claims are not substantial nor do they have some merit. Bryant must be able to show that counsel's performance was unreasonable and he was prejudiced by it. The claim of an excessive sentence lacks merit and therefore, initial post-conviction counsel was not deficient in failing to present it to the court.

The Cruel and Unusual Punishments Clause of the Eighth Amendment prohibits the imposition of inherently barbaric punishments under all circumstances, but also punishments that are disproportionate to the crime. *Graham v. Florida*, 130 S. Ct. 2011, 2021 (2010). "The concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'" *Graham*, 130 S.Ct. at 2021 (quoting *Weems v. United States,* 217 U.S. 349, 367 (1910)). "To determine whether a sentence is grossly disproportionate, [the Court should] examine the gravity of the offense compared to the harshness of the penalty." *U.S. v. Lee*, 625 F.3d 1030, 1037 (8th Cir. 2010) (internal quotations omitted). The Court considers the harm caused or threatened to the victim or to society, and the culpability and degree of the defendant's involvement. *Id.* "If the penalty appears grossly disproportionate given the offense, then [the court] compare[s] the sentence with sentences imposed on other criminals in the same jurisdiction and the sentences imposed for violations of

the same crime in other jurisdictions." *Ramos v. Weber*, 303 F.3d 934, 937 (8th Cir. 2002). "Although this narrow proportionality principle, applies to both capital sentences and terms of years, outside the context of capital punishment, successful challenges to the proportionality of particular sentences are exceedingly rare." *U.S. v. Weis*, 487 F.3d 1148, 1153 (8th Cir. 2007).

Counsel's failure to bring a claim during Bryant's direct appeal regarding an excessive sentence was not unreasonable. The sentences are all within the statutorily prescribed sentencing ranges. "A sentence within the statutory limits is generally not subject to Eighth Amendment review." *U.S. v. Atterberry*, 447 F.3d 562, 565 (8th Cir. 2006). In addition, the sentencing court's imposition of consecutive sentences does not render the punishment "grossly disproportionate for Eighth Amendment purposes." *See Atterberry*, 447 F.3d at 565. Bryant acknowledges in his reply brief that his sentences were "technically legal."

Bryant states, however, that his sentence was excessive and unconstitutional because it was dramatically higher than he would have received if he had pled guilty rather than going to trial. Bryant infers that he was punished for going to trial. There is no evidence in the record to support this contention. First, there is no evidence in the record that the sentencing judge knew about a plea offer until the sentencing when Bryant stated, "The State offered me thirty years. I'm sorry I had to risk my life because I didn't do nothing." (Resp't Ex. A at 525.) Second, there is no evidence of "vindictiveness" on the part of the sentencing court. During trial, the testimony revealed that the victim was waiting for a friend to take him to work when he was robbed and brutally murdered. At sentencing, the Court heard testimony from Bryant, his family, the victim's family. The Court noted that although the victim and Bryant both had toddler aged sons, Bryant's son still had him there to visit and talk to while the victim's son does not have his father anymore. Based on the foregoing, the Court finds that Bryant has not shown

his excessive sentence claim is substantial or has merit.  Therefore, Bryant has not shown cause and prejudice for his default.

Finally, Bryant has not presented evidence to support a miscarriage of justice claim.  To constitute a miscarriage of justice, Bryant must show that a constitutional violation has probably resulted in the conviction of one who is actually innocent.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  Other than Bryant's allegations, there is no evidence supporting a claim of actual innocence.  As Bryant has not presented any evidence demonstrating cause or actual prejudice for his procedural defaults or exhibiting a fundamental miscarriage of justice, his excessive sentence claim cannot be evaluated for federal habeas review.

**IV.    Conclusion**

Based on the foregoing, the Court finds that Bryant's request for relief pursuant to 28 U.S.C. § 2254 should be denied.  Further, because Bryant has made no showing of a denial of a constitutional right, the Court will not issue a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(2); *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that the Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.  [Doc. 12.]

**IT IS FURTHER ORDERED** that a separate judgment will be entered this same date.

**IT IS FURTHER ORDERED** that, for the reasons stated herein, any motion by Russell Bryant for a Certificate of Appealability will be **DENIED**.

Dated this 27th day of March, 2015.

/s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE